AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS, demandante y recurrente, *v.* LIBROTEX, INC. y OTROS, demandados y recurridos; AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS, demandante y recurrida, *v.* CONTINENTAL INSURANCE COMPANY, et als., demandada y recurrente.

*Números:* RE-94-309          *Resueltos:* 31 de julio de 1996
              RE-94-547

*Harry R. Nadal Arcelay* y *Fernando J. Fornaris,* de *Cancio, Nadal, Rivera & Díaz,* abogados de la Autoridad de Acue-

ductos y Alcantarillados de Puerto Rico, recurrente y recurrida; *Iván M. Fernández,* abogado de la American Guarantee and Liability Insurance Company, recurrida; *Vicente Santori Coll,* abogado de Continental Insurance Company, recurrente.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Ante la insolvencia de un asegurador *primario,* ¿responden las aseguradoras *en exceso* por la totalidad de aquellas reclamaciones cubiertas que existan antes de la determinación de insolvencia?

## I

El 12 de abril de 1990 se rompió una tubería, propiedad de la Autoridad de Acueductos y Alcantarillados de Puerto Rico (en adelante la Autoridad),[1] la cual estaba localizada entre la calle Brumbaugh y la Avenida Ponce de León, en Río Piedras. Dicha rotura causó que se inundaran las calles y penetrara el agua al interior de los edificios que albergan el almacén de Librotex, Inc. (en adelante Librotex) y la Librería Editorial Lea, Inc.

A la fecha del accidente, la Autoridad tenía vigentes y expedidas a su favor varias pólizas de seguro para cubrir los riesgos y daños ocasionados a la propiedad de terceros. *Primero,* la Corporación Insular de Seguros (en adelante Corporación Insular), como *asegurador primario,* había expedido una póliza de responsabilidad pública con un límite de $2,000,000, por la cual pagó una prima de $2,170,000.[2]

---

[1] La Autoridad de Acueductos y Alcantarillados de Puerto Rico (en adelante la Autoridad) es una corporación pública e instrumentalidad gubernamental del Estado Libre Asociado. 22 L.P.R.A. sec. 142.

[2] Esta información, con respecto a la prima pagada a la Corporación Insular de Seguros, surge de la demanda de sentencia declaratoria presentada por la Autoridad, a la que hacemos referencia más adelante. *Al igual que al tribunal de instancia, nos sorprende, pues no surge explicación de por qué la prima pagada es mayor que el límite de cubierta.*

*Segundo*, una *póliza de exceso* expedida por la American Guarantee and Liability Insurance Company (en adelante American), Núm. FXS-60-83-517-00, cuyos límites eran de $10,000,000 en *exceso* de los $2,000,000 cubiertos por la Corporación Insular. La prima pagada fue de $775,000. *Tercero*, The Continental Insurance Company en adelante había expedido una *póliza de exceso* (Núm. LX-1-36-05-88) con límites de $8,000,000 en *exceso* de las cubiertas de la Corporación Insular y de American. Se pagó una prima de $267,000.

Oportunamente, Librotex demandó por daños y perjuicios a la Autoridad. Mediante Sentencia de 15 de octubre de 1992, el Tribunal Superior, Sala de San Juan (Hon. Pedro López Oliver, Juez), le concedió $2,407,232 por daños, más las costas e intereses a razón de 8.5% anual a partir del 3 de septiembre de 1993 hasta el pago total de la sentencia.

Subsiguientemente, el Tribunal Superior, Sala de San Juan, mediante Orden de 21 de diciembre de 1992, decretó en *Ralph J. Rexach Chandri v. Corporación Insular de Seguros*, Caso Civil Núm. KAC-92-1745 (902), *insolvente* a la Corporación Insular. Entonces la Autoridad instó una demanda de sentencia declaratoria para solicitar al tribunal que determinara si le correspondía a American y a Continental satisfacer en su totalidad la sentencia dictada a favor de Librotex.

Continental y American pidieron una sentencia sumaria. En síntesis, ambas alegaron que el lenguaje utilizado en los contratos de seguro fue claro y explícito en cuanto a que sus pólizas eran exclusivamente en exceso. Adujeron que no se les podía requerir que se convirtieran en aseguradores primarios ante la insolvencia de la Corporación Insular.

El ilustrado tribunal de instancia (Hon. Antonio L. Corretjer Piquer, Juez), mediante una sentencia parcial, ac-

cedió y dictaminó que American no tenía la obligación de convertirse en asegurador primario.(³) En cuanto a Conti-. nental, en otra Sentencia Parcial de 7 de septiembre de 1994, concluyó que estaba obligada a convertirse en asegurador primario y responder desde el primer dólar ($1) hasta la suma de $2,000,000.(⁴)

En recursos separados acuden ante nos la Autoridad(⁵) y Continental.(⁶) Una vez consolidados, procedemos a resolver.

---

(³) Concluyó "que la insolvencia o estado de liquidación de la C.I.S., en forma alguna opera en contra de American Guarantee and Liability Insurance Company (en adelante American) en cuanto a la aplicabilidad de sus límites. Hemos visto que bajo los términos claros y precisos de la póliza, la insolvencia de la C.I.S. y por ende la falta de disponibilidad de su límite primario de $2,000,000.00, no obliga a la American a descender ("drop down") al nivel primario. Esa posibilidad queda rechazada por el lenguaje de la póliza, específicamente en la parte donde dice que a pesar de falta de límites cobrables por insolvencia, esos límites se tendrán como si hubieran estado en efecto y cobrables". Caso Núm. RE-94-309, Sentencia Parcial de 31 de mayo de 1994, pág. 7.

(⁴) Sostuvo que no hay duda "que tanto Continental como la AAA contrataron sobre una póliza de seguro en exceso de los 2 millones cubiertos por la C.I.S. y en exceso de los 10 millones de la American. Sin embargo, prestándose el lenguaje de la póliza de Continental *para más de una interpretación*, y no habiendo ningún seguro subyacente válido y cobrable, es necesario que de acuerdo a las reglas de interpretación de contrato, la cláusula 'obscura' sea interpretada a favor del asegurado". (Énfasis suplido.) Caso Núm. RE-94-309, Sentencia Parcial de 7 de septiembre de 1994, pág. 10.

(⁵) En el Caso Núm. RE-94-309, señala:

"ERRÓ EL TRIBUNAL DE INSTANCIA AL CONCLUIR QUE LA CODEMANDADA AMERICAN GUARANTEE AND LIABILITY INSURANCE CO. NO TIENE OBLIGACIÓN BAJO LOS TÉRMINOS DE SU PÓLIZA DE CONVERTIRSE EN ASEGURADOR PRIMARIO." Solicitud de revisión, pág. 4.

(⁶) En el Caso Núm. RE-94-547, sostiene que incidió el tribunal a quo:

"a) Al no dictar sentencia sumaria a favor de la aquí recurrente Continental Insurance Company decretando que la póliza de dicha compañía aseguradora era una estrictamente en exceso y que no cubría el pago de las pérdidas que le correspondía asumir al asegurador primario insolvente C.I.S.

"b) Al dictar sentencia sumaria parcial a favor de la recurrida Autoridad de Acueductos y Alcantarillados de Puerto Rico, decretando que la aquí recurrente Continental Insurance Company debía convertirse en asegurador primario ante la insolvencia de la Corporación Insular de Seguros, no obstante estar pendiente de resolución por este Honorable Tribunal Supremo si en efecto la póliza de American —como primera aseguradora en el exceso— cubre o no el pago de las pérdidas del asegurador insolvente C.I.S." Solicitud de revisión, pág. 5.

## II

■ En buena metodología adjudicativa, expongamos primeramente la doctrina vigente en materia de seguros. El Código de Seguros establece que "[t]odo contrato de seguro deberá interpretarse *globalmente*, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". (Énfasis suplido.) 26 L.P.R.A. sec. 1125.

Como *todo contrato*, el de seguros constituye ley entre las partes si concurren las condiciones esenciales para su validez y no es contrario a la ley ni al orden público. *Torres v. E.L.A.*, 130 D.P.R. 640 (1992).

■ Tradicionalmente los contratos de seguros —*que son de adhesión*— han sido objeto de un cuidadoso escrutinio judicial; cualesquiera dudas se interpretan a favor del asegurado con el objetivo de, por vía de una interpretación razonable, sostener una cubierta. Véanse: *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659, 662 (1986); *Roldán Medina v. Serra*, 105 D.P.R. 507, 514 (1976); *Ferrer v. Lebrón García*, 103 D.P.R. 600, 603 (1975); *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91, 93 (1974); *Rosario v. Atl. Southern Ins. Co. of P.R.*, 95 D.P.R. 759, 765 (1968); *Pérez Escobar v. Collado*, 90 D.P.R. 806, 811 (1964); *Barreras v. Santana*, 87 D.P.R. 227, 232-233 (1963); *Maryland Cas'y Co. v. San Juan Rac'g Assoc., Inc.*, 83 D.P.R. 559, 565-566 (1961).

Sin embargo, cuando su lenguaje es claro y sin ambigüedades

...las partes deberán atenerse a sus cláusulas, dándoles efectividad y vigor de la forma en que lo manifestaron al momento de contratar. La norma que rige en nuestra jurisdicción de que los contratos de seguro, por ser de adhesión, deben ser interpreta-

dos liberalmente a favor del asegurado, no tiene el efecto de obligar a que se interprete a favor de éste una cláusula que claramente y sin ambigüedad le da la razón al asegurador en la controversia que se suscite entre ambos. *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659 (1986); *Casanova v. P.R.-Amer. Ins. Co.*, 106 D.P.R. 689 (1977). *Torres v. E.L.A.*, supra, pág. 652.

■ En 1991 se creó la *Asociación de Garantía de Seguros Misceláneos de Puerto Rico* (en adelante Asociación) con el propósito de hacer viable "un mecanismo para el pago de reclamaciones cubiertas bajo determinadas pólizas(⁷) de seguro con el fin de evitar excesivas dilaciones en el pago, [y] evitar pérdidas financieras a los reclamantes o tenedores de pólizas como resultado de la insolvencia de un asegurador". Ley Núm. 72 de 17 de agosto de 1991 (26 L.P.R.A. sec. 3802).

La Asociación está obligada a pagar una cantidad que no excederá de $150,000 por reclamación. 26 L.P.R.A. sec. 3808. Obviamente, en ocasiones, este remedio no será suficiente para satisfacer la totalidad de los daños causados. Es usual entonces que el asegurado invoque la *doctrina del descenso (drop down)*; esto es, que pretenda que sus aseguradores *en exceso* desciendan de nivel y lo cubran en sustitución del asegurador *primario insolvente.*

Un análisis detenido de la jurisprudencia federal y estatal refleja que lo *determinante* es el lenguaje utilizado en las cláusulas de la póliza de seguro. *Shapiro v. Associated Intern. Ins. Co.*, 899 F.2d 1116 (11mo Cir. 1990); *Steve D. Thompson Trucking v. Twin City Fire Ins.*, 832 F.2d 309

---

(⁷) "... [S]e aplicará a toda clase de seguro, excepto reaseguro, pero no será aplicable a: (1) Seguros de vida o incapacidad; (2) garantía hipotecaria, garantía financiera y otras formas de seguro que ofrezcan protección contra riesgos de inversiones; (3) seguro de garantía excepto el seguro de fidelidad que garantiza la probidad de los empleados públicos; (4) seguro de garantía de funcionamiento (*warranty insurance*) o de contratos de servicio; (5) seguro de título; (6) seguro marítimo-oceánico; (7) cualquier transacción o combinación de transacciones entre una persona (incluyendo las afiliadas de ésta) y un asegurador (incluyendo las afiliadas de éste) que envuelva la transferencia de riesgo de crédito o inversiones que no está acompañada de una transferencia de riesgo de seguro; (8) cualquier seguro provisto o garantizado por el Gobierno." 26 L.P.R.A. sec. 3803.

*(5to Cir. 1987);* Mission Nat. Ins. Co. v. Duke Transp. Co., Inc., *792 F.2d 550 (5to Cir. 1986);* Holland v. Stanley Scrubbing Well Service, *666 F. Supp. 898 (W.D. La. 1987);* American Hoist v. Employers' of Wausau, *454 N.W.2d 462 (1990);* Robichaux v. Randolph, *563 So. 2d 226 (1990);* Alabama Ins. Guar. v. Magic City Trucking Service, Inc., *547 So. 2d 849 (1989);* Donald B. MacNeal, Inc. v. Inter. Fire & Cas., *132 Ill.App.3d 564 (1985).*

■ Jurisprudencialmente, se han identificado tres (3) categorías. *Kelly v. Weil,* 563 So. 2d 221 (1990). La *primera,* pólizas cuyo lenguaje establece que su cubierta es *en exceso de la cubierta cobrable del asegurador primario.* Cuando se utiliza el término *cobrable (recoverable),* varios tribunales han determinado que el asegurador en exceso debe descender de nivel y darle una cubierta al asegurado cuando el primario adviene insolvente. *Alabama Ins. Guar. v. Magic City Trucking Service, Inc.,* supra; *Gulezian v. Lincoln Ins. Co.,* 399 Mass. 606 (1987); *Donald B. MacNeal, Inc. v. Inter. Fire & Cas.,* supra. El razonamiento utilizado es que al advenir insolvente el asegurador primario, su cubierta deja de ser *cobrable*; por ende, el asegurador en exceso cubre la totalidad de la reclamación.[8]

La *segunda,* pólizas que describen la cubierta como *en exceso de los límites de las pólizas descritas en el propio contrato.* No se debate que ante este lenguaje *la doctrina del descenso es inaplicable,* pues es claro que no provee para que el asegurador en exceso descienda si el primario adviene insolvente. *Shapiro v. Associated Intern. Ins. Co.,* supra; *Steve D. Thompson Trucking v. Twin City Fire Ins.,* supra; *Mission Nat. Ins. Co. v. Duke Transp. Co., Inc.,* supra; *Holland v. Stanley Scrubbing Well Service,* supra; *Alaska Rural Elec. CO-OP. v. Insco. Ltd.,* 785 P.2d 1193 (Alaska 1990); *American Hoist v. Employers' of Wausau,*

---

[8] Para casos en que se haya determinado que no aplica la *doctrina del descenso,* aun bajo cláusulas que utilicen el término *cobrable,* véase 85 A.L.R.4th 748 (1991).

supra. La cubierta no depende de si hay o no pólizas cobrables y se establece con claridad que responde por la suma que exceda de los límites de las pólizas listadas en el mismo contrato.

Finalmente, la *tercera*, describe la cubierta como *en exceso de la cantidad mayor entre la cubierta ofrecida por las pólizas listadas en el propio contrato y cualquier otra cubierta cobrable por el asegurado*. Se ha resuelto que aquí aplica el *descenso*. La frase "cobrable por el asegurado" cualifica tanto "las pólizas listadas en el propio contrato" como a "cualquier otra cubierta". Por ello, bajo igual razonamiento que en la primera categoría, se sostiene la cubierta del asegurador en exceso. *Robichaux v. Randolph*, supra; *Alabama Ins. Guar. v. Magic City Trucking Service, Inc.*, supra; *Poirrier v. Cajun Insulation, Inc.*, 501 So. 2d 800 (1986), reconsideración denegada, 502 So. 2d 579 (1987); *Geerdes v. St. Paul Fire and Marine Ins. Co.*, 128 Mich.App. 730 (1983).

■ Otro factor que se ha de considerar al determinar la aplicabilidad o no de la *doctrina del descenso* es la expectativa que hayan creado ambas partes al negociar el contrato de seguro en exceso. *Cuando se guarda silencio sobre qué ocurrirá* si el asegurador primario adviene insolvente, se entiende que el asegurado *crea una expectativa* de que la cubierta en exceso le cubrirá. *Alabama Ins. Guar. v. Magic City Trucking Service, Inc.*, supra.

Por otro lado, algunos tribunales, en casos en que el lenguaje del contrato involucrado corresponde a la *segunda categoría*, han expresado que el asegurado no tiene esa expectativa si la prima pagada por la póliza en exceso es considerablemente más baja que la pagada al asegurador primario. Así, en *American Hoist v. Employers' of Wausau*, supra, se determinó que el asegurador en exceso no tenía la obligación de descender, pues la prima de la póliza ($20,000) era menor a la pagada a las aseguradoras que

advinieron insolventes ($50,000 y $42,500). Ahora bien, el contrato de seguros en *American Hoist v. Employers' of Wausau*, supra, según concluyó el propio Tribunal, era de *segunda categoría*. En consecuencia, *independientemente* de la prima pagada a la aseguradora en exceso, ésta no hubiera descendido de nivel.[9]

Cuando el lenguaje de la póliza corresponde a la *primera o tercera* categoría, o es *ambigua*, aplica el descenso y la aseguradora en exceso cubre, aunque la prima pagada por el seguro en exceso sea más baja. *McGuire v. Davis Truck Services, Inc.*, supra; *Donald B. MacNeal, Inc. v. Inter. Fire & Cas.*, supra. El hecho de que se haya ofrecido una cubierta en exceso por una prima reducida no cambia la interpretación y el contenido de las cláusulas del contrato. *Donald B. MacNeal, Inc. v. Inter. Fire & Cas.*, supra, pág. 1326.

Debemos recordar que, de ordinario, las primas de los seguros en exceso son más bajas que la de los seguros primarios, pues el riesgo de tener que ofrecer la cubierta es menor. Por ello, aunque las primas pagadas son un factor que se ha de considerar, *no es determinante*. En consecuencia, *el factor principal que se ha de considerar es el lenguaje utilizado en el contrato de seguros aprobado entre las partes.* Schaller, *Excess, Surplus Lines and Reinsurance: Recent Developments in Umbrella and Excess Liability Insurance*, 24 Tort and Insurance L.J. 287, 291 (1989).

Apliquemos este prisma doctrinario a la situación fáctica de autos.

---

[9] Véase, además, *Alaska Rural Elec. CO-OP. v. Insco Ltd.*, 785 P.2d 1193 (Alaska 1990), en el cual se determinó que no había expectativa entre las partes de que la aseguradora en exceso descendiera, pues la prima de su póliza era de $43,992 comparada con la del asegurador primario de $150,000. Sin embargo, se trataba también de una *segunda categoría*. En *Maricopa County v. Federal Ins. Co.*, 157 Ariz. 308 (Ariz. App. 1988), ante un contrato de la *segunda categoría*, el tribunal expresó que "un asegurado paga primas reducidas a las aseguradoras en exceso porque éstas vendrán obligadas a ofrecer cubierta sólo después que el asegurador primario pague cierta cantidad". (Traducción nuestra.)

# III

## A. *American*

El contrato de seguro habido entre la American y la Autoridad establece que "[l]os límites de la responsabilidad de la compañía bajo esta póliza aplicarán *sólo después de que las aseguradoras primarias hayan pagado o sean halladas legalmente responsables de pagar en su totalidad la cantidad de sus límites de responsabilidad*, que suman el total *expresado en el inciso 5 de las declaraciones de esta póliza*". (Traducción y énfasis nuestros.) Caso Núm. RE-94-547, Apéndice, pág. 40.

Más adelante, su Parte VI define "seguros subyacentes" como aquellas "pólizas primarias o en exceso que forman parte del límite total expresado en el inciso 5 de las declaraciones". Añade que los *"límites de las pólizas [de las aseguradoras primarias] tienen que considerarse aplicables independientemente* de (1) cualquier defensa que pueda invocar el asegurador primario, (2) el incumplimiento del asegurado con cualquier cláusula o condición de esta póliza, (3) *la insolvencia del asegurador primario*, o (4) la cancelación de cualquier seguro primario". (Traducción y énfasis nuestros.) Caso Núm. RE-94-547, Apéndice, pág. 41. En el inciso (5) de las declaraciones consignaron expresamente las partes, como seguro subyacente, la póliza de $2,000,000 expedida por la Corporación Insular, *aseguradora primaria*.

De todo este conglomerado de cláusulas, es forzoso concluir que se trata de un contrato bajo la *segunda* categoría. Al interpretar las cláusulas globalmente, el conjunto total de sus términos y condiciones reflejan que la cubierta de la American *era en exceso* y aplicaba sólo después de que la Corporación Insular hubiera pagado o fuera hallada legalmente responsable de pagar la totalidad de su límite de responsabilidad.

El propio contrato estableció que los límites de la póliza

de la Corporación Insular aplicarían aunque adviniera insolvente. Estamos ante un mandato claro y libre de toda ambigüedad: *es ley entre las partes.* La Autoridad sabía que aún ante la insolvencia de la Corporación Insular, American cubriría sólo por el exceso de $2,000,000. *No erró el ilustrado tribunal de instancia.*

## B. *Continental*

En cuanto a Continental, la situación es distinta. Las cláusulas del contrato son ambiguas y susceptibles de *más de una interpretación razonable.* Concluimos que aplica la *doctrina del descenso* y Continental debe descender de nivel y ofrecer la cubierta a la Autoridad. Nos explicamos.

En el endoso número dos (2), adherido a la póliza, se establece que la cubierta es en *exceso* de y conforme a los términos y las condiciones de la póliza Núm. FXS-60-83-517-00 de American, a menos que el contrato de Continental disponga lo contrario. Si interpretamos esta cláusula *aisladamente*, habría que concluir que no aplica la *doctrina del descenso*, pues según hemos visto, el contrato de seguros de American está bajo la *segunda* categoría. Sin embargo, como expusimos, las cláusulas de un contrato de seguros hay que interpretarlas de forma integral, unas con las otras.

Así, bajo el acápite de "Condiciones", en el inciso (3), titulado "Límites de Responsabilidad", se estableció que "con respecto a la cubierta (A), (B) o (C) o cualquier combinación de éstas, la compañía responderá sólo *en exceso de (a) los límites de responsabilidad de los seguros subyacentes descritos y listados en la propia póliza y cualquier otro seguro subyacente cobrable* por el asegurado". (Traducción y énfasis nuestros.) Caso Núm. RE-94-547, Apéndice, pág. 152.

El lenguaje de esta cláusula corresponde al de los contratos de la *tercera* categoría. El término *cobrable* cualifica tanto la expresión "límites de responsabilidad de los segu-

ros subyacentes descritos y listados en la propia póliza", como a "cualquier otro seguro subyacente". Debido a que la cubierta de la Corporación Insular *no es cobrable,* aplica la *doctrina del descenso.*

El contrato entre Continental y la Autoridad tiene la particularidad de contener unas cláusulas que están en conflicto, pues una no hace aplicable la doctrina del descenso y otra sí. Interpretamos esta ambigüedad a favor de la Autoridad como asegurada, sosteniendo la cubierta.

Ciertamente, la prima recibida por Continental ($267,000) fue sustancialmente menor que la pagada a la Corporación Insular ($2,170,000) y a American ($775,000). Ahora bien, según dijimos, no es determinante. *Primero,* distinto a *American Hoist v. Employers' of Wausau,* supra, a *Alaska Rural Elec. CO-OP. v. Insco Ltd.,* supra, y a *Maricopa County v. Federal Ins. Co.,* supra, el *lenguaje* del contrato entre Continental y la Autoridad es *ambiguo.* Que la prima pagada sea reducida, no cura la ambigüedad del contrato de seguro. Y *segundo, guarda silencio sobre qué ocurriría en caso de que las aseguradoras primarias advinieran insolventes,* creando en el asegurado una expectativa de que el seguro en exceso le cubriría.

Ahora bien, incidió el tribunal a quo al dictaminar que Continental "tiene que descender al nivel que le correspondía a la Corporación Insular de Seguros y responder desde el primer dólar" ($1). Sentencia Parcial de 7 de septiembre de 1994, pág. 10. Perdió de vista que la Asociación de Garantía de Seguros Misceláneos de Puerto Rico cubre a la Autoridad en $150,000.([10]) Es en exceso de esta cantidad, y hasta la suma de $2,000,000, que Continental está obligada a cubrir a la Autoridad.

A la luz de lo antes expuesto, *se dictará sentencia a los*

---

([10]) Así lo indicó al tribunal de instancia la Autoridad al expresar que "[e]s bien sabido que la Asociación de Garantía, por operación de ley, viene obligada a pagar hasta la suma de $150,000.00. Es sobre los excesos de esta cuantía donde estriba la controversia en este caso". Moción de reconsideración de 17 de marzo de 1994.

*efectos de que Continental responda por el exceso de $150,000 hasta $2,000,000 y, de ahí en adelante, American. Así modificadas, serán confirmadas.*

El Juez Presidente Señor Andréu García disintió sin opinión escrita. El Juez Asociado Señor Hernández Denton no intervino.